IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| COBBLER NEVADA, LLC, | Case No. 3:15-cv-01228-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| SANTOS A. CERRITOS, JR., | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

Plaintiff Cobbler Nevada, LLC filed this action against Santos A. Cerritos, Jr. ("Cerritos"), alleging a claim for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101-1332. Plaintiff now moves, pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure ("Rule") 54(d), for its attorney's fees and costs. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and the parties have consented to the jurisdiction of a U.S. Magistrate Judge. (ECF No. 49.) For the reasons that follow, the Court grants in part, and denies in part,

Page 1 - OPINION AND ORDER

Plaintiff's Bill of Costs (ECF No. 51), and denies Plaintiff's Motion for Attorney's Fees (ECF No. 52).

## BACKGROUND

Since 2014, Plaintiff's counsel has filed hundreds of cases in the United States District Court for the District of Oregon, alleging that Doe defendants, initially identified only by their Internet Protocol ("IP") addresses, violated the Copyright Act by downloading movies on the Internet using the "BitTorrent" protocol.[1] BitTorrent is a peer-to-peer file sharing protocol used to distribute data over the Internet.

On July 2, 2015, Plaintiff filed the original Complaint in this case, naming an IP address as a Doe defendant, and asserting that someone associated with that IP address illegally downloaded and distributed Plaintiff's motion picture, *The Cobbler* ("Movie"). Plaintiff sought and obtained discovery from Internet Service Provider Comcast to identify the IP address subscriber associated with the allegedly infringing activity. In September 2015, Plaintiff sought and obtained a Rule 45 subpoena for the deposition of the subscriber, in order to identify the alleged infringer. In October 2015, and prior to a Rule 45 deposition, Cerritos (still a "Doe") retained counsel to negotiate a settlement. (Thomas Freedman Decl. Ex. C, Aug. 13, 2016.) On October 27, 2015, Cerritos' counsel contacted the Court and requested a settlement conference. (Freedman Decl. Ex. A.)

Cerritos' counsel reports that the parties agreed to stay discovery and motions pending the settlement conference to avoid incurring litigation costs. (Freedman Decl. Ex. C.) Nevertheless,

---

[1] Early cases filed by Plaintiff's counsel joined many defendants in a single complaint. *See, e.g., Voltage Pictures, LLC v. Does 1-371*, No. 3:13-cv-00295-AA (filed Feb. 19, 2013) (naming 371 Doe defendants). This district has since prohibited swarm joinder in BitTorrent copyright litigation. *See* Standing Order 2016-8.

Page 2 - OPINION AND ORDER

Plaintiff filed a First Amended Complaint ("FAC") on November 24, 2015, naming Cerritos as the defendant and alleging that he illegally downloaded and distributed *The Cobbler*. A few weeks later, Cerritos' counsel filed a notice of appearance. (ECF No. 17.) Shortly thereafter, defense counsel sent a second letter to the Court, requesting a Rule 16 Conference to address his concerns about how Plaintiff's counsel was handling this case. (Freedman Decl. Ex. B.)

On December 22, 2015, Cerritos served Plaintiff with a formal Offer of Judgment and, the next day, Cerritos filed an unopposed motion to extend time to answer the FAC. (ECF No. 19.) On January 6, 2016, the parties appeared for a Rule 16 Conference and discussed, among other things, efforts to streamline resolution of the case, including staying discovery while settlement negotiations were underway. (Freedman Decl. Ex. C.) Also on January 6, 2016, Plaintiff's counsel sent Cerritos' counsel this email:

> Mr. Freedman:
>
> This is to confirm that we maintain an open offer to accept an FRCP 68 offer of judgment for $[redacted] statutory damages, cost[s], fees and an injunction against your client.
>
> We currently have costs and fees in excess of $[redacted] but would agree to settle costs and fees at $[redacted] or have them determined pursuant to FRCP 54.

(Thomas Freedman Decl. Ex. A, Apr. 19, 2016.)

In an effort to settle the case, Cerritos requested a second extension of time from Plaintiff's counsel to file an answer, which Plaintiff's counsel declined. (Freedman Decl. Ex. C.) As a result, on January 26, 2015, Cerritos filed a general denial answer and alleged three affirmative defenses. (ECF No. 22.) A few days later, Cerritos' counsel provided Plaintiff's counsel with Cerritos' sworn declaration that detailed Cerritos' financial hardship. (ECF No. 60.) In his Declaration, Cerritos swore under penalty of perjury that he lives with his wife and young daughter, has over $30,000 in

Page 3 - OPINION AND ORDER

credit card debt, earns a combined monthly income of $4,188, and incurs monthly expenses of $3,668. (*Id.*)

Notwithstanding the parties' agreement to stay discovery pending settlement negotiations, on February 15, 2016, Plaintiff's counsel filed motions for discovery and to strike Cerritos' affirmative defenses. On the same day, Cerritos served Plaintiff with a Second Offer of Judgment. The next day, Cerritos filed an Amended Answer, acknowledging that he downloaded and viewed Plaintiff's Movie via the BitTorrent network. (Am. Answer ¶ 1.) Cerritos believed that in light of his admission to the alleged violation of the Copyright Act, Plaintiff would withdraw its motions for discovery. (Freedman Decl. Ex. C.) When that did not occur, Plaintiff contacted the Court and requested a judicial settlement conference. (Freedman Decl. Ex. C.)

On March 23, 2016, the parties participated in a two-hour judicial settlement conference. At the conclusion of the settlement conference, the case was reported as settled. (ECF No. 33 ("Case settles.").) However, on March 28, 2016, the parties contacted the Court and reported that the case was no longer settled. (ECF No. 34 ("The parties report that the case is no longer settled.").)

Also on March 28, 2016, Cerritos served Plaintiff with a written Third Offer of Judgment, in response to the January 6, 2016 "open offer" email. The Third Offer of Judgment included the amount of statutory damages Plaintiff sought, injunctive relief, reimbursement of Plaintiff's $400 filing fee, and an agreement to have remaining costs and fees, if any, "determined pursuant to FRCP 54." (Def.'s Mot. to Enforce Settlement Agreement, Thomas Freedman Decl. Ex. B (hereinafter "Freedman Enforce Decl."), Apr. 19, 2016 ). Defendant served the Offer of Judgment on Plaintiff's counsel, with this note:

> Mr. Crowell,
>
> Attached is a service copy of Defendant's Third Offer of Judgment, a copy of which is also being sent to you via first class mail. Please confirm receipt of the attached. Among other things, the attached Offer of Judgment should be construed as an express acceptance of your client's "open offer" as set forth in your January 6, 2016 email to me (copy forwarded with this email).

(Freedman Enforce Decl. Ex. B.)

On March 29, 2016, Plaintiff's counsel confirmed receipt of the Third Offer of Judgment, and responded, via email: "I consider this offer ambiguous, non-compliant with prior requests for an FRCP 68, and it cannot be accepted." (Def.'s Mot. to Enforce Settlement Agreement 2.) Specifically, Plaintiff stated that "contrary to any prior offer by [P]laintiff," the FRCP 68 Offer of Judgment "maintained a full denial of any liability, presumably including a denial of willfulness, essentially foreclosing costs and fees beyond the filing fee of this action." (Pl.'s Resp. 3.)

On April 19, 2016, Cerritos filed a Motion to Enforce Settlement Agreement. Cerritos argued that the action was settled by his acceptance of Plaintiff's "open offer" proposed in a January 6, 2016 email. (Def.'s Mot. to Enforce Settlement Agreement 1-2.) Cerritos made an alternative request that the Court enforce the settlement agreement arising from the parties' judicial settlement conference. (Def.'s Reply 4.)

On May 31, 2016, the Court heard oral argument on Cerritos' Motion to Enforce Settlement Agreement. (ECF No. 47.) One week later, and prior to the Court issuing its decision on Cerritos' pending motion, the parties filed a Stipulated Consent Judgment. (ECF No. 49.) In the consent judgment, the parties agreed to an award of statutory damages in the mandatory minimum amount of $750, and also agreed that the Court should award "reasonable attorneys fees and costs," in

accordance with 17 U.S.C. § 505 and pursuant to Rule 54. (ECF No. 49 at 1.) Plaintiff's motion for attorney's fees and costs followed, and was taken under advisement on September 2, 2016.

## DISCUSSION

### A.  Plaintiff's Bill of Costs

Under 28 U.S.C. § 1920, a federal court may tax specific items as costs against a losing party pursuant to Rule 54(d)(1).[2] Although the Court has discretion to deny costs, Rule 54(d)(1) creates a presumption in favor of awarding costs. *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010).

Plaintiff seeks costs in the amount of $700. This figure includes the filing fee ($400), service fees ($118), subpoena fees charged by Comcast ($70), and fees paid to Cerritos for his subpoenaed appearance at the Rule 45 deposition ($112).

Cerritos opposes Plaintiff's request for a $112 reimbursement for his appearance at the Rule 45 deposition. That deposition never occurred and, as such, Cerritos never cashed Plaintiff's check. Cerritos also opposes Plaintiff's request for reimbursement for the $70 subpoena fee paid to Comcast, on the ground that it is not a taxable cost under § 1920. Finally, Cerritos objects to Plaintiff's reimbursement of a $63 process server fee incurred for service of the FAC. According to Cerritos, service occurred after "defendant appeared through counsel, formally requested a

---

[2] Section 1920 provides that a judge or clerk of any court of the United States may tax the following as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

judicial settlement conference, and informed [P]laintiff's counsel that [D]efendant would not be denying liability." (Def's Resp. 5 (citing *Countryman Nevada, LLC v. Doe*, __ F. Supp. 3d __, 2016 WL 3437598, at 7 (D. Or. June 17, 2016).)

With regard to the $112 paid for Cerritos' appearance at the Rule 45 deposition, the Court agrees that Plaintiff is not entitled to reimbursement of costs that were not actually incurred. There is no dispute that Cerritos did not cash Plaintiff's reimbursement check. (Carl Crowell Decl. ¶ 39, June 13, 2016.) Accordingly, the Court denies Plaintiff's request for a $112 reimbursement for Cerritos' deposition expenses.

With regard to the $63 fee for service of the FAC, the Court notes that it is a common courtesy in this district to ask counsel to accept service on a client's behalf. Plaintiff was aware that Cerritos was represented, even if Cerritos' counsel had not yet filed a formal notice of appearance, and it would have kept costs down to ask Cerritos' counsel to accept service. Nevertheless, the Court denies reimbursement of the $63 service fee for a different reason. The process server's invoice states that Cerritos was served on December 11, 2015, by "substitute residence mail." (Ex. 3.) The Court never authorized substitute mail service of the FAC, and Plaintiff never filed a certificate of service. For these reasons, the expense was unnecessary and the Court denies Plaintiff's request for reimbursement.

With regard to the $70 Comcast subpoena fee, courts in this district routinely award that expense as a taxable cost, despite the fact that the cost is incurred prior to identification of the alleged infringer. *See, e.g., Countryman Nevada, LLC,* 2016 WL 3437598, at *8; *Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1-11*, 3:15-cv-1550-SB, 2016 WL 4238639, at *2 (D. Or. Aug. 10, 2016); *Dallas Buyers Club v. Sager*, 3:15-cv-00731-AC, 2016 WL 5661940, at *5

(D. Or. Sept. 7, 2016). Accordingly, the Court grants Plaintiff's request to be reimbursed for the $70 Comcast subpoena fee.

The Court finds that the remainder of Plaintiff's requested costs are reasonable and permissible under 28 U.S.C. § 1920. Accordingly, the Court awards Plaintiff costs in the amount of $525.

**B.     Plaintiff's Motion for Attorney's Fees**

Plaintiff asks the Court to order Cerritos to pay Plaintiff's attorney's fees in the amount of $17,348.60, for 57.8 hours of attorney time spanning July 1, 2015, through June 13, 2016. The Court exercises its discretion to deny Plaintiff's request to shift fees in this case.

**1.     Attorney Fee Awards in Copyright Cases are Discretionary.**

The Copyright Act provides, in relevant part:

> In any civil action under this title, a court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court *may* also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (emphasis added). The Supreme Court has held that a district court may exercise its discretion to grant, or deny, attorney's fees to a prevailing party in a copyright case. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."); *see also McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987) ("[W]e do not believe Congress intended that the prevailing plaintiff should be awarded attorney's fees in every case."); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (affirming denial of plaintiff's motion for attorney's fees); *Buck v. Bilkie*, 63 F.2d 447, 447 (9th Cir. 1933) (same). Indeed, the Supreme Court recently reiterated, in a unanimous decision, that "§ 505 grants courts wide latitude to award

attorney's fees based on a totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S. __, 136 S. Ct. 1979, 1985 (2016). The Supreme Court emphasized that "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions[.]" *Kirtsaeng*, 136 S. Ct. at 1988.

The Supreme Court has identified "several nonexclusive factors to guide courts' discretion," including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (citation and quotation marks omitted); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 957 (9th Cir. 2012) (affirming denial of motion for attorney's fees in copyright case, and noting that district courts should consider, "'among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence'") (citation omitted), *rev'd on other grounds*, __ U.S. __ , 134 S. Ct. 1962 (2014). In *Kirtsaeng*, the Supreme Court noted that a court may also consider the need to "deter . . . overaggressive assertions of copyright claims[.]" 136 S. Ct. at 1989.

The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act," *Mattel, Inc. v. MGA Entm't*, 705 F.3d 1108, 1111 (9th Cir. 2013), and that the primary purpose of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013); *see also Fogerty*, 510 U.S. at 527 ("[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works[.]").

### 2.    The Court's Discretion Applied.

The Court concludes that fee shifting is inappropriate in this case, for two reasons. First, fee shifting in mass copyright litigation does not satisfy the *Fogerty* factors. *See Anonymous Users of Popcorn Time*, 2016 WL 4238639 (reaching same conclusion in similar BitTorrent copyright case); *Glacier Films (USA), Inc. v. Turchin*, 3:15-cv-1817-SB, 2016 WL 4251581 (D. Or. Aug. 10, 2016) (same), *appeal docketed*, No. 16-35688 (9th Cir. Aug. 26, 2016.) Second, even if fee shifting is appropriate in some BitTorrent cases, it is not appropriate here, where Plaintiff unnecessarily prolonged this litigation.

### (a)    Fee Shifting in Mass Copyright Litigation Does Not Satisfy the *Fogerty* Factors.

Applying the *Fogerty* factors, the Court concludes that while a copyright holder's action against an individual BitTorrent copyright infringer is not frivolous under the Copyright Act, the degree of success in each case is minimal, in two respects. First, the $750 statutory damage award Cerritos has agreed to pay is low in relation to the amount of attorney's fees Plaintiff has accrued ($17,348.60), to achieve that result. *See Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 F. App'x 244, 249 (9th Cir. 2009) (noting that limited success, such as nominal damages, may support the denial of a fee award, and observing that "an award of attorneys' fees that is ten times the amount recovered in damages seems unreasonable under the circumstances"). Second, Plaintiff acknowledges that its movie, *The Cobbler*, has been illegally downloaded hundreds of thousands of times, including over 10,000 times in Oregon alone. (First Am. Compl. ¶ 11.) Although this case resulted in an injunction against one infringer, that result is *de minimis* in relation to the serious online piracy problem Plaintiff seeks to combat. On balance, the degree of success Plaintiff

has achieved as the prevailing party in this litigation does not warrant requiring Cerritos to fund Plaintiff's enforcement of its copyright.

In addition to the degree of success obtained, the Court may also consider the need for deterrence as a relevant factor in making a fee award determination. *Fogerty*, 510 U.S. at 534 n.19. For downloading a single movie, the Court is already requiring Cerritos to pay $750 in statutory damages, as well as $525 to reimburse Plaintiff for its costs, for a total financial penalty of $1,275. As this Court has noted in other cases, a financial penalty of that magnitude is sufficient to deter Cerritos, as well as others, from illegally downloading movies in the future. *See, e.g., Glacier Films (USA), Inc. v. Gallatin*, No. 3:15-cv-01632-SB, 2016 WL 3148401, at *3 (D. Or. May 12, 2016) ("[C]ommon sense supports a conclusion that a $750 financial penalty for illegal downloading one movie is more than sufficiently punitive to deter others from illegally downloading free movies on the BitTorrent network. With knowledge that it will now cost $750 to watch a single movie on the BitTorrent network, consumers should be motivated instead to spend a few dollars to rent the same movie legally."). In light of the substantial financial penalty already imposed, an attorney fee award is not necessary to deter further infringement, nor is a fee award necessary to encourage Plaintiff to continue to protect its rights, where Plaintiff has been vigilant to date and has the resources to police their copyright. *See Grateful Dead Prod. v. Come 'N' Get It*, No. 88 CIV. 4471 (MEL), 1994 WL 116052, at *1 (S.D.N.Y. Mar. 25, 1994) (denying prevailing plaintiffs' application for attorney's fees, noting that "substantial damages have already been assessed against the defendants [a small retail store and its owner]" and an award is not "required to encourage the plaintiffs to protect their rights" where "[t]hey have been understandably vigilant in that cause and have the resources to police their copyrights"); *cf. Fogerty*, 510 U.S. at 1028 (rejecting comparison of fee shifting under

Page 11 - OPINION AND ORDER

the Civil Rights Act involving impecunious plaintiffs to fee shifting under the Copyright Act, because "'[e]ntities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants'") (citation omitted).

The Supreme Court and the Ninth Circuit have also recognized that a district court should award attorney's fees only if doing so will further the purposes of the Copyright Act. In these BitTorrent copyright cases, the threat of fee-shifting has emboldened Plaintiff's counsel to demand thousands of dollars to settle a claim, even where the infringing defendant admits early in the case that he illegally downloaded the movie. *See, e.g., Countryman Nevada, LLC*, 2016 WL 3437598, at *2 (noting that plaintiff demanded $8,500 to settle the case after the defendant acknowledged liability early in the case); *Cobbler Nevada, LLC v. Reardon*, No. 3:15-cv-01077-ST, 2015 WL 9239773, at *2 (D. Or. Dec. 16, 2015) (noting that unrepresented defendant agreed to consent judgment in the amount of $8,500).[3] That appears to be what happened here, but Cerritos refused to pay.

The Copyright Act, as it is being enforced in these BitTorrent cases, has created results inconsistent with the goals of the Act. When an individual who has illegally downloaded a movie is contacted by Plaintiff's counsel, and faces the threat of a statutory damage award that could

---

[3] *See also Malibu Media, LLC v. Doe IP Address 66.108.67.10*, No. 15 Civ. 4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by 'copyright trolls,' roughly defined as plaintiffs who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.'") (citation omitted).

theoretically reach $150,000 (*see* 17 U.S.C. § 504(c)(2)), as well as the threat of a substantial fee award, the resulting bargaining process is unequal, and unfair. For this Court to award Plaintiff its attorney's fees in this case would only contribute to the continued overaggressive assertion and negotiation of these Copyright Act claims. *See Kirtsaeng*, 136 S. Ct. at 1989 (noting that a court should consider the need to "deter . . . overaggressive assertions of copyright claims"). As another court recently noted in a similar BitTorrent case, a federal court should make its tools available only with careful scrutiny, to avoid the potential for abuse:

> There is no doubt that online piracy of digital media is a major problem today. Ordinarily, the 'federal court system provides litigants with some of the finest tools available to assist in resolving disputes.' Those tools can empower copyright-owners to enforce their rights, but they are also capable of being used as instruments of abuse. Where abuse is likely, as it is here, courts should not make those tools available without careful scrutiny.

*Malibu Media, LLC*, 2015 WL 4092417, at *6 (citation omitted). This Court has already provided many of its tools to facilitate Plaintiff's enforcement of its copyright, including allowing ex parte discovery to identify the alleged infringer. However, exercising the Court's discretion to require Cerritos to pay more than $17,000 in attorney's fees, for illegally downloading a single movie, would render an inequitable outcome that is inconsistent with the policies served by the Copyright Act. *See Fogerty*, 510 U.S. at 524 ("[T]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement."); *Warner Bros Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1127 (2d Cir. 1989) ("In the district court's discretion, fees need not be awarded if the award would not vindicate underlying statutory policies or it would be inequitable.") (citations omitted).

The threat of fee-shifting in these BitTorrent cases has created an unjust scenario in this and other districts, in which enterprising plaintiffs' counsel can demand thousands of dollars to settle

these cases before the subscriber is even named as a defendant, because the cost of federal litigation is prohibitive (for one party, let alone paying for both parties' attorney's fees). A startling number of subscribers are failing to show up for Rule 45 depositions, and alleged infringers are more often than not choosing default judgments over litigation. By allowing this scenario to occur for several years now, the federal courts are not assisting in the administration of justice, but are instead enabling plaintiffs' counsel and their LLC clients to receive a financial windfall by exploiting copyright law.

For these reasons, the Court denies Plaintiff's motion for attorney's fees.

### (b) Fee Shifting Is Inappropriate In This Case Because Plaintiff Prolonged This Litigation Unnecessarily.

Even if the Ninth Circuit disagrees with this Court's view that fee-shifting is inappropriate in mass copyright litigation, a fee award is nevertheless unjustified in this case because Plaintiff prolonged the litigation unnecessarily.

Early in this litigation, Cerritos acknowledged that he downloaded Plaintiff's movie and, as such, sought to reach a settlement with Plaintiff. (Freedman Decl. Ex. C.) The litigation should have ended there. However, despite Cerritos' concession of liability and efforts to stay the case pending resolution, Plaintiff's counsel continued to litigate this case aggressively. (Freedman Decl. Ex. C; *see also* Am. Answer ¶ 1.) Pending the scheduling of a settlement conference, Plaintiff filed and served the FAC, and refused to agree to an extension of time for Cerritos to respond to the FAC. That resulted in Cerritos' filing of an answer, and Plaintiff's preparation of discovery requests and a motion to strike affirmative defenses. Plaintiff now seeks to force Cerritos to pay his bill for litigation Cerritos sought to avoid.

All of the litigation in this case could have been avoided with an early settlement, in light of Cerritos' acknowledgment of liability from the outset. It appears that the deal breaker for Plaintiff was the amount of money Cerritos was initially willing to pay, but also Cerritos' refusal to acknowledge that he downloaded the movie "willfully." Indeed, Plaintiff acknowledged that it rejected Cerritos' third offer of judgment because Cerritos' refusal to admit willfulness would impact the success of Plaintiff's fee application. Prolonging litigation in the interest of supporting a fee application is inconsistent with Rule 1 and the purposes of the Copyright Act. *See Countryman Nevada, LLC*, 2016 3437598, at *8 (denying fee motion submitted by Plaintiff's counsel, and noting that "it appears to this Court that one of the primary objectives of Plaintiff in undertaking the litigation conduct described was to increase the bases for a prevailing party fee petition").

In addition, Plaintiff's counsel learned early on that Cerritos was of limited means. (Freedman Decl. Ex. B.) While that does not mean that Cerritos can escape liability altogether, he should not be stuck with the bill for the inability of counsel to resolve this case quickly and inexpensively. At best, Cerritos and his family have a few hundred dollars left over each month after paying their expenses. If the Court were to force Cerritos to pay Plaintiff's counsel his fee of $17,348.60, it would take Cerritos and his family years and years to satisfy that debt. It is a debt that was avoidable had counsel working together cooperatively to resolve this case.

For these independent reasons, the Court exercises its discretion to deny Plaintiff's motion for attorney's fees.

//

//

//

## CONCLUSION

Online piracy is a serious problem that demands meaningful solutions. Plaintiff has every right to enforce the copyright it holds, but not to demand that individual consumers who downloaded a single movie pay more than their share of the problem.

For the reasons stated, the Court GRANTS in part and DENIES in part Plaintiff's Bill of Costs (ECF No. 51), and the Court awards Plaintiff its costs in the amount of $525. The Court DENIES Plaintiff's Motion for Attorney's Fees (ECF No. 52).

IT IS SO ORDERED.

Dated this 9th day of December 2016.

*Stacie F. Beckerman*
STACIE F. BECKERMAN
United States Magistrate Judge